IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **A.M., an individual,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. **3:21-CV-1668-L** |
| § | |
| **SALESFORCE.COM, INC. and** § | |
| **BACKPAGE.COM, LLC,** § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant Salesforce.com, Inc.'s ("Salesforce") Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (Doc. 14) ("Motion to Dismiss"), filed on September 27, 2021; Salesforce's Motion for Leave to File Supplemental Authority (Doc. 25) ("Motion for Leave"), filed on May 25, 2022; Salesforce's Amended Motion for Leave to File Supplemental Authority (Doc. 26) ("Amended Motion for Leave"), filed on June 2, 2022; and Salesforce's Unopposed Motion Requesting Oral Argument (Doc. 29) ("Motion for Oral Argument"), filed on June 8, 2022. After careful consideration of the motions, briefs, pleadings, record, and applicable law, the court **determines** that it lacks personal jurisdiction over Salesforce. Accordingly, the court **grants** Salesforce's Motion to Dismiss and **dismisses without prejudice** Plaintiff's claims against Salesforce; and **denies as moot** Salesforce's Motion for Leave, Amended Motion for Leave, and Motion for Oral Argument.

### I.   Factual and Procedural Background

Plaintiff A.M. ("Plaintiff" or "A.M.") initiated this action on July 19, 2021, based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff brings claims against Salesforce and Defendant Backpage.com, LLC ("Backpage") alleging violations of the William

**Memorandum Opinion and Order – Page 1**

Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595(a); Section 98.002A(a) of the Texas Civil Practice and Remedies Code; and Section 98.002(a) of the Texas Civil Practice and Remedies Code. Specifically, A.M. alleges that she "was sold for unlawful sex acts through force, fraud, and coercion" beginning in the summer of 2014 through "Backpage advertisements placed on Backpage's website under various geographic areas, including Colorado and Oregon." Doc. 1 at 12. Allegedly, Backpage was engaged in the business of "sex trafficking and the selling of sex" and "sought a partnership that would assist the vision of its growth as the leader in online sex sales as well as concealing such activity including the moving of its operations offshore to evade law enforcement." *Id.* at 7.

To expand Backpages' business, Plaintiff alleges that it entered into a business relationship with Salesforce for Salesforce to provide it with the tools, support, and resources needed to operate and grow its business, which included among other things, a Customer Relationship Management (CRM) system that allowed Backpage to integrate with credit card processors and provided Backpage with the tools to text potential and past clients. *Id.* at 2. She further alleges that "Salesforce, by accepting funds from Backpage, economically benefitted from the trafficking of Plaintiff A.M. and the thousands of other trafficking victims Backpage exploited." *Id.* at 9.

Salesforce seeks to dismiss Plaintiff's Complaint on the grounds that: (1) the court lacks personal jurisdiction over Salesforce with respect to Plaintiff's claims; (2) Plaintiff's claims are barred by 47 U.S.C. § 230(e)(5)(A); and (3) Plaintiff failed to adequately plead her claims.

## II. Applicable Law

### a. Rule 12(b)(2) – Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham*

*v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

      A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

**Memorandum Opinion and Order – Page 3**

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d 720, 725 (S.D. Tex. 1999) (quoting *Burger*

*King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id*. (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

### b. Rule 12(b)(6) – Standard for Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm*

*Mut. Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether

the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### III.    Analysis

Salesforce contends that dismissal is proper under Rule 12(b)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, Salesforce first argues that the court lacks personal jurisdiction over it because "Plaintiff's alleged injuries did not arise from any relevant actions by Salesforce in Texas." Doc. 18 at 1. Salesforce next argues that even if the court has jurisdiction over it, Section 230 of the Communications Decency Act (47 U.S.C. § 230) bars Plaintiff's claims because "Salesforce is a provider of an interactive computer service and Plaintiff seeks to hold it liable for online ads posted by third parties." Doc. 15 at 10. Finally, Salesforce argues that even if Plaintiff's claims are not exempt under Section 230 of the Communications Decency Act, dismissal of the Complaint is still proper because Plaintiff failed to allege any plausible claim against Salesforce. *Id.* at 15. In this regard, Salesforce contends that Plaintiff does not allege sufficient facts supporting a violation of 18 U.S.C. § 1595 because there are no facts showing that Salesforce knew or should have known about Plaintiff being trafficked through Backpage. Doc. 18 at 9. The court sets forth its analysis for resolving each argument below.

**Memorandum Opinion and Order – Page 7**

### A. Personal Jurisdiction

Salesforce argues that the court does not have specific personal jurisdiction over it and that exercising jurisdiction would be inconsistent with the constitutional requirements of due process. In support, Salesforce maintains that Plaintiff's claims do not arise out of or relate to Salesforce's contacts in Texas, and exercising personal jurisdiction over it would be unfair and unreasonable.[1] *Id*. A.M., in response, argues that the court has specific jurisdiction over Salesforce because "Salesforce's activities in Texas form, at least in part, the operative basis of [her] claims." Doc. 17 at 26. Plaintiff further alleges that those activities include: (1) forming a venture with Backpage in Texas; (2) entering into "multiple contracts with Backpage, a Texas company, in Dallas, Texas"; (3) routinely visiting Texas to provide technical services to Backpage; and (4) receiving payments from Backpage from Texas. *Id*. at 25. Further, Plaintiff argues that Salesforce "did not contest personal jurisdiction in any of the previous human trafficking lawsuits filed against [it] in Texas, and Salesforce is currently defending a number of related suits in Texas, including Multidistrict Litigation formed at the request of Salesforce."[2] *Id.* at 28.

The court will limit its analysis to whether specific jurisdiction exists because only specific, not general, jurisdiction is at issue between the parties. For the reasons explained below, the court finds that it does not have personal jurisdiction over Salesforce.

To determine whether A.M. has made a prima facie showing of specific personal jurisdiction over Salesforce, this court is to consider:

---

[1] Salesforce notes that because "Plaintiff does not allege that this [c]ourt has general jurisdiction over Salesforce" and "alleges only specific jurisdiction," it focuses its arguments on the lack of specific personal jurisdiction rather than general personal jurisdiction. Doc. 15 at 6.

[2] Salesforce is currently defending claims that are like those present in this case in Harris County, Texas, in Multidistrict Litigation 19-0991, filed on November 1, 2019, and in the United States District Court for the Southern District of Texas, Houston Division, in Case No. 4:20-cv-01254, filed on April 8, 2020.

**Memorandum Opinion and Order – Page 8**

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. The minimum contacts inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it reasonably anticipates being haled into court.

*Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692 F.3d 358, 375 (5th Cir. 2012) (quoting *McFadin v. Gerber,* 587 F.3d 753, 759 (5th Cir. 2009)).

   *1. Forum-Directed Activities*

The first element is uncontested by Salesforce, and the court finds that Plaintiff has made a prima facie showing that Salesforce has minimum contacts with Texas. Plaintiff's uncontroverted allegations establish that Salesforce "purposely directed its activities toward [Texas and] purposefully availed itself of the privileges of conducting activities [here]" by, in relevant part: (1) being registered to do business in Texas since at least 2005 and maintaining a registered agent in Texas; (2) entering into multiple contracts with Backpage, a Texas company, in 2013, 2016, and 2017; (3) routinely visiting Texas to "provide technical services to Backpage"; and (4) sending invoices to Backpage in Texas and receiving payments "from Backpage from Texas." Doc. 1 at 5; *see Alexander v. Anheuser-Busch, L.L.C.*, No. 19-30993, 2021 WL 3439131, at *3 (5th Cir. Aug. 5, 2021) (affirming that specific jurisdiction was not present over defendant, but recognizing that the first element was satisfied because the defendant had "sufficient contacts with [the forum state] by virtue of the presence of employees, the sale of products, and the presence of a registered agent."). Moreover, Salesforce does not challenge that Plaintiff has met the first element, which further supports the court's conclusion that the first element is satisfied.

**Memorandum Opinion and Order – Page 9**

### 2. *Causes of Action Arising from Forum-Related Contacts*

Next, Salesforce contends the second element is not met because the allegations that it entered into a business relationship with Backpage wherein it provided Backpage with a CRM system "has nothing to do with the operation of the backpage.com website or Backpage's policies regarding ads, much less the alleged trafficking of Plaintiff." Doc. 15 at 8. Salesforce relies on *Bristol-Myers Squibb* to support its argument. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1781 (2017). Plaintiff counters that Salesforce's reliance on *Bristol-Myers Squibb* "is misplaced" because, while the Supreme Court held specific jurisdiction was lacking over the pharmaceutical developer with respect to the nonresident's claims, the Court also noted that the underlying conduct of the pharmaceutical developer "occurred somewhere other than the forum." Doc. 17 at 27. Plaintiff argues that here, by contrast, Salesforce's conduct relevant to the claims at issue occurred in Texas; therefore, "the relatedness component of the analysis is satisfied." *Id.* The court agrees.

The Supreme Court's holding in *Bristol-Myers Squibb* is instructive. Eighty-six California residents and 592 residents from other states sued Bristol-Myers Squibb Co. ("Bristol-Myers"), a pharmaceutical company, for damages allegedly caused by consuming Plavix—a prescription drug that Bristol-Myers manufactured and sold. *Bristol-Myers Squibb Co.,* 137 S. Ct. at 1778. The Court ruled that the California court lacked specific jurisdiction over Bristol-Myers regarding the nonresidents' claims because there was no connection between the forum—California—and the specific claims at issue—injuries sustained from consuming Plavix. Specifically, the Court noted that "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Id.* at 1781.

**Memorandum Opinion and Order – Page 10**

Unlike the nonresident plaintiffs in *Bristol-Myers Squibb*, Plaintiff's claims against Salesforce arise from Salesforce's conduct in Texas. Pointedly, Plaintiff seeks to hold Salesforce liable for allegedly providing Backpage with several products and features that allowed Backpage "to grow and expand its internet based online selling of sex, sex trafficking and compelled prostitution including the trafficking of Plaintiff A.M." Doc. 1 ¶ 57. A.M. alleges that Salesforce provided these features to Backpage through numerous contacts in Texas. She also alleges the following details that support contacts with Texas: (1) Salesforce entered into multiple contracts with Backpage, a Texas company; (2) Salesforce "routinely visited Texas to provide technical services to Backpage"; and (3) Salesforce sent invoices to, and received payment from, Backpage. *Id.* at 5. In other words, Plaintiff outlines numerous facts, which this court must take as true, that establish an affiliation between the forum and the activity and claims at issue. *See Bristol-Myers Squibb Co.,* 137 S. Ct. at 1781 ("In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation omitted)). The court, therefore, finds that Plaintiff's claims arise or result from Salesforce's forum-related contacts.[3] The court next considers whether exercising jurisdiction over Salesforce would be fair and reasonable.

### 3. Fair and Reasonable Exercise of Jurisdiction

Salesforce has the burden to show that the exercise of personal jurisdiction over it would not be fair or reasonable because the first two prongs of specific personal jurisdiction are satisfied.

---

[3] The court notes that this is a close call because the underlying controversy—A.M. being trafficked—occurred outside of this forum. The claims against Salesforce, however, occurred within the forum. The court reasons that the attenuation between the forum and the underlying controversy is best addressed in the third element, as it concerns whether exercising personal jurisdiction would be fair and reasonable.

**Memorandum Opinion and Order – Page 11**

*See McFadin*, 587 F.3d at 759 ("In determining whether or not exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof.") "It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). In evaluating the fairness of asserting jurisdiction, the court must balance: (1) Salesforce's burden in "having to litigate in the forum; (2) the forum state's interests in the lawsuit; (3) the [Plaintiff's] interests in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." *Burger King.*, 471 U.S. at 476-477; *Wien Air Alaska Inc.*, 195 F.3d at 215; *Felch v. Transposes Lar-Mex SA De CV*, 92 F.3d 320, 324 (5th Cir. 1996). The Fifth Circuit has held that "an exercise of jurisdiction likely comports with the due process clause" when the cause of action is for a forum resident's injury that is "directly related to the tortious activities that give rise to personal jurisdiction." *Wien Air Alaska*, 195 F.3d at 215.

Salesforce argues, in support of its burden, that it "would not be fair or reasonable to exercise personal jurisdiction [over it] given the lack of any relevant connection between Plaintiff's injuries and the state of Texas." Building on its argument, Salesforce further contends:

> Texas has virtually no interest in deciding whether a non-Texas defendant is liable for attenuated acts related to a non-Texas plaintiff who suffered an injury outside of Texas in other states. Nor does Texas have an interest in subjecting Salesforce to suits by plaintiffs all around the country by individuals who claim to have been injured by an affiliate of one of Salesforce's customers that happens to have been based in Texas. *McFadin v. Gerber*, 587 F.3d 753, 759-60 (5th Cir. 2009) (personal jurisdiction cannot rest on "'random,' fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person'") (citations omitted).

Doc. 15 at 10. Plaintiff, in response, asserts that Salesforce's argument is "flawed." Doc. 17 at 33. In particular, she argues that exercising jurisdiction over Salesforce is fair and reasonable because: (1) Salesforce did not contest personal jurisdiction in any of the previous human trafficking actions related to their relationship with Backpage in other districts in Texas; and (2) Texas has an interest

**Memorandum Opinion and Order – Page 12**

in protecting persons from human trafficking, not just Texas residents or human trafficking occurring in Texas. *Id*. at 33-34. The court disagrees.

That Salesforce is currently defending similar lawsuits in another Texas district has no bearing on this court's analysis because those actions are clearly distinguishable in that they were brought by plaintiffs who allege they were harmed in Texas.[4] Plaintiff, on the other hand, alleges she was harmed in Oregon and Colorado. The court now addresses the five factors in evaluating the fairness of asserting jurisdiction.

The factors for determining the fundamental fairness issue are balanced against exercising personal jurisdiction over Salesforce. As to the first fairness factor, the burden on Salesforce having to litigate in Texas is not substantial. "[M]odern transportation and communications have made it much less burdensome for a party sued to defend [itself] in a State where he engages in economic activity [thus,] it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Burger King,* 471 U.S. at 474. Moreover, Salesforce does not articulate how it will be burdened if required to litigate in this forum. Accordingly, this factor weighs in favor of exercising personal jurisdiction over Salesforce.

For the second factor, Salesforce contends that Texas does not have an interest in adjudicating claims brought by an out-of-state plaintiff against an out-of-state defendant concerning injuries suffered outside of Texas. A.M., on the other hand, argues that Texas has an interest in "prohibiting the formation of trafficking ventures in the State." In support, A.M. relies

---

[4] ***Compare*** Fourth Amended Complaint, *A.B., an individual and J.F., an individual v. Salesforce.com, Inc. and Backpage.com, LLC*, No. 4:20-cv-1254 (S.D. Tex. Oct. 5, 2021), ECF No. 96 ("A.B. and J.F. were trafficked in this District and Division."); Second Amended Complaint, *A.E., an individual v. Salesforce.com, Inc. and Backpage.com, LLC*, No. 4:20-cv-1516 (S.D. Tex. July 10, 2020), ECF No. 21 ("A.E. was trafficked in this District and Division."); Third Amended Complaint, *P.P., an individual v. Salesforce.com, Inc. and Backpage.com, LLC*, No. 4:20-cv-1256 (S.D. Tex. Aug. 17, 2020), ECF No. 22 ("P.P. was trafficked in this District and Division.") ***with*** Complaint, *A.M., an individual v. Salesforce.com, Inc. and Backpage.com, LLC*, No. 3:21-cv-1668 (N.D. Tex. July 19, 2021), ECF No. 1 ("the venture that trafficked [A.M.] was formed in this District and Division" and "[A.M.] was trafficked through . . . Backpage's website under various geographic areas, including Colorado and Oregon.").

**Memorandum Opinion and Order – Page 13**

on § 98.006 of the Texas Civil Practice and Remedies Code that addresses liability for trafficking of persons is to "be liberally construed and applied to promote its underlying purpose to protect persons from human trafficking and provide adequate remedies to victims of human trafficking." Tex. Civ. Prac. & Rem. Code § 98.006. For the reasons that follow, the court finds that while the purpose of § 98.006 is to protect persons from human trafficking, it does not follow that Texas would have a greater or equal interest in protecting nonresidents who are trafficked outside of Texas, as would a state in which a person is actually trafficked. *See Burger King*, 471 U.S. at 473 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."). Plaintiff is a resident of Colorado, and she alleges ultimate injuries—being trafficked—that occurred in Colorado and Oregon. Stated another way, while A.M. alleges a business venture was formed in Texas, the incident at the core of her suit occurred not in Texas, but in Oregon and Colorado. Although Salesforce entered into a contract with Backpage to provide it with certain services in Texas, that alone does not form a strong relationship between Salesforce, the forum, and Plaintiff such that Texas has the requisite interest. Accordingly, this factor weighs against exercising personal jurisdiction over Salesforce.

Next, Plaintiff has a strong interest in securing convenient and effective relief; however, the most convenient and effective relief is not in this forum. The United States District Court for the District of Colorado is the most convenient and effective forum in which A.M. could seek relief because the ultimate harm occurred in that forum and A.M. is a resident of that forum. Moreover, there are additional forums that offer Plaintiff effective relief, such as the forums where Salesforce is a resident—Delaware and California. Accordingly, this factor weighs against exercising personal jurisdiction over Salesforce.

**Memorandum Opinion and Order – Page 14**

As to the fourth fairness factor, the judicial system's interest in efficient resolution of controversies does not favor exercising personal jurisdiction over Salesforce in this forum because there are other forums with a great interest in resolving, or ability to resolve, the parties' dispute. Accordingly, this factor weighs against exercising personal jurisdiction over Salesforce.

Finally, as to the fifth fairness factor, Texas has an interest in furthering fundamental social policies by discouraging business relationships that support trafficking. The alleged connection between Salesforce's contractual relationship with Backpage and A.M. being trafficked, however, is far too attenuated to support this factor. Accordingly, this factor weighs against exercising personal jurisdiction over Salesforce. Based on the court's analysis, four of the factors weigh in favor of Salesforce, and one weighs in favor of A.M.

Accordingly, on balance, this is a rare case where claim-related contacts are present, but exercising personal jurisdiction over Salesforce would not be fair or reasonable. *Cf. E.S. v. Best Western Int'l, Inc.,* 510 F. Supp. 3d 420, 434 (N.D. Tex. 2021) (finding that exercise of personal jurisdiction over defendant was fair and reasonable because defendant owned and operated hotels in the district and plaintiff was harmed in specified hotels located in the forum state); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-1194, 2020 WL 1244192, at *3 (S.D. Ohio Mar. 16, 2020) (finding the court had personal jurisdiction over defendant and plaintiff's claim against defendant alleging violations of 18 U.S.C. § 1595(a) because "Plaintiff is an Ohio resident and her alleged trafficking occurred in the state of Ohio. Any inconvenience to defendant Best Western of litigating in Ohio does not override the other factors suggesting that personal jurisdiction in Ohio is reasonable.") (internal quotation omitted); *see C.T. v. Red Roof Inns, Inc.*, No. 2:19-CV-5384, 2021 WL 602578, at *6 (S.D. Ohio Feb. 16, 2021) (finding the court lacked personal jurisdiction over defendants because plaintiff's trafficking occurred outside of the forum and plaintiff did not

plead "with requisite particularity that a conspiracy existed, aimed at or specifically harming Ohio more than any other state, such that personal jurisdiction would be constitutionally proper.") The court, therefore, declines to address Salesforce's remaining arguments pursuant to Federal Rule of Civil Procedure 12(b)(6) because the court does not have personal jurisdiction over Salesforce.

### IV. Dismissal Versus Transfer

This court is now confronted with the question of whether to dismiss Plaintiff's claims against Salesforce for lack of personal jurisdiction, as Salesforce requests, and force her to pursue the same case in two different courts, or to exercise its discretion and transfer this action, in the interest of justice, to any court in which A.M. could have brought this action at the time it was filed. *See* 28 U.S.C. §1631. There are multiple districts in which this action could have been brought, but A.M. does not argue or inform the court as to which district, in the interest of justice, this action should be transferred. For this reason, the court finds dismissal, rather than transfer, is appropriate. Accordingly, the court **declines** to transfer this case to another district pursuant to 28 U.S.C. §1631 and leaves it to A.M.'s discretion to determine where she prefers to refile this action.

### V. Conclusion

For the reasons herein stated, the court **determines** that it lacks personal jurisdiction over Salesforce. Accordingly, the court **grants** Salesforce's Motion to Dismiss and **dismisses without prejudice** Plaintiff's claims against Salesforce. In light of its ruling, the court **denies as moot** Salesforce's Motion for Leave (Doc. 25), Amended Motion for Leave (Doc. 26), and Motion for Oral Argument (Doc. 29).

**It is so ordered** this 16th day of June, 2022.

Sam A. Lindsay  
United States District Judge